UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HEARNS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 175 |
| | ) | |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| INTERSTATE BANK, | ) | |
| An Illinois Banking Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court are the parties' Cross Motions for Summary Judgment. For the following reasons, Plaintiff James Hearns' Motion for Summary Judgment is denied, and Defendant Interstate Bank's Motion for Summary Judgment is granted.

**I. INTRODUCTION[1]**

A. Facts

Plaintiff James Hearns ("Hearns") is a former Director of the Defendant, Interstate Bank ("IB"). IB is an Illinois State banking corporation with offices in Oak Forest, Tinley Park, and Chicago, Illinois. In July, 1988, Hearns and IB entered into a "Salary Continuation Plan Agreement" providing for Hearns' retirement benefits (the "Contract"). Pursuant to this Contract, Hearns was to receive $96,000 per year for ten years beginning either at the age of sixty-five, or after his actual retirement if he chose to retire after he reached sixty-five, provided

---

[1] The court takes undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

that he abided by certain restrictive covenants.

The Contract contains the following pertinent clauses.

Opening Paragraph: THIS AGREEMENT is made and entered into . . . by and between INTERSTATE BANK OF OAK FOREST . . . and JAMES HEARNS . . . (hereinafter referred to as the 'Employee').

RECITALS, ¶¶ 1-3: The Employee is a director of the Corporation; and The Corporation recognizes the value of the services performed by the Employee and wishes to encourage said Employee's continued employment; and The Employee wishes to be assured that said Employee will be entitled to a certain minimum amount of additional compensation after retirement from active service with the Corporation or that said Employee's family will be entitled to such compensation from and after said Employee's death either while in the employ of the Corporation or within ten (10) years after said Employee's retirement from the service of the Corporation . . .

AGREEMENT, ¶ 1a, Retirement Benefits: In consideration of the Employee's continuing employment until retirement at age sixty-five (65) . . . the Corporation agrees that, from and after the age of sixty-five (65), or the date of retirement if after age sixty-five (65), the Corporation shall pay the Employee the sum of $96,000 per annum for a period of ten (10) years.

AGREEMENT, ¶ 3, Agreements of Employee: In consideration of the foregoing agreements of the Corporation and of the payments to be made by the Corporation, the Employee agrees that while in the active employ of the Corporation, the Employee will devote such time, skill, diligence and attention to the business of the Corporation as required in order to carry out the duties and obligations of the employee to the Corporation and will not actively engage, either directly or indirectly, in any business or other activity which is or may be deemed to be in any way competitive with or adverse to the best interest of the Corporation.

AGREEMENT, ¶ 8a, Agreements of Employee: The Employee agrees that upon termination of employment . . . and for a three year period following said termination, said Employee shall not engage in, become interested in as a substantial shareholder, partner or sole proprietor, nor become associated with, in the capacity of employee, director, officer, trustee or in any other capacity, any Bank or Savings and Loan or other similar enterprise conducting business within a five (5) mile radius from the offices of the Corporation, which is, or may be deemed to be, competitive with any business carried on by the Corporation without the written consent of the Corporation.

2

In September 2002, Hearns turned 65, the agreed-upon retirement age as specified in paragraph 1a of the AGREEMENT section of the Contract. Instead of retiring, however, Hearns decided to continue as a Director of IB. IB then decided to begin making retirement benefit payments to Hearns immediately, rather than waiting for Hearns to actually retire. See Contract, AGREEMENT, ¶ 1a. In 2004, Hearns served IB as chairman of the loan committee, chairman of the examining audit committee, and chairman of the assets and liability committee. However, beginning in 2004, Hearns also began to participate in the planning and formation of the Lincolnway Community Bank ("LB"), to be located in New Lenox, Illinois. In May 2004, Hearns met with potential organizers of LB, and gathered names of individuals to be considered for the position of Chief Executive Officer of LB. On October 29, 2004, Hearns signed an Application for State Banking Charter and for Federal Deposit Insurance, which was submitted to the Division of Banks and Real Estate of the Department of Financial and Professional Regulations, on behalf of LB. This Application listed Hearns as one of the Directors of LB. In November 2004, IB removed Hearns as Director, and terminated Hearns' retirement payments.

## B. Procedural History

On January 11, 2005, Hearns filed a one-count Complaint in the Northern District of Illinois, alleging that IB's failure to continue his retirement payments constituted breach of contract. The court has determined that there is complete diversity between the parties, and that the amount in controversy is over $75,000. The parties have filed Cross Motions for Summary Judgment, asserting that there is no genuine issue of material fact as to whether Hearns or IB, respectively, breached the terms of the Contract. These Motions are fully briefed and before the court.

3

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the

4

record that support that party's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003)(citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

The same summary judgment standard applies when cross motions for summary judgment are filed. Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co., 427 F.3d 1038, 1041 (7th Cir. 2005). To prevail, a party must show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Id.

**B. Summary Judgment and Contract Interpretation**

The Seventh Circuit favors summary judgment as a means to resolve disputes over the interpretation of a contract. Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 564-65 (7th Cir. 1995) ("[s]ummary judgment is particularly appropriate in cases involving the interpretation of contracts") (citing Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir. 1989)); Metalex Corp. v. Uniden Corp. of America, 863 F.2d 1331, 1333 (7th Cir. 1988) ("[c]ontract interpretation is a subject particularly suited to disposition by summary judgment"); Majchrowski v. Norwest Mort., 6 F. Supp. 2d 946, 963 (N.D. Ill. 1998) ("[s]ummary judgment is particularly appropriate for resolving contract interpretation disputes") (citing Murphy, 61 F.3d at 564-65). Contract disputes are especially well suited to resolution by summary judgment when the terms of the contract are unambiguous. "If a contract is unambiguous, by definition no issues of material fact exist regarding the contract's interpretation; that interpretation is a question of law for the court." Metalex, 863 F.2d at 1333; see also Murphy, 61 F.3d at 565 ("[w]here the contract is unambiguous, a court must determine the meaning of the contract as a matter of law");

McWane, Inc. v. Crow Chicago Indus., 224 F.3d 582, 584 (7th Cir. 2000) ("[i]f the district court determines that the contract is unambiguous, it may determine its meaning as a matter of law").

If a court determines that a contract is unambiguous, the next step is for the court to determine the plain and obvious meaning of the contractual term in question. Majchrowski, 6 F. Supp. 2d at 963. "[W]e begin our analysis with the language of the contract itself... If the language unambiguously answers the question at issue, the inquiry is over." Emergency Medical Care v. Marion Mem. Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996); see also McWane, 224 F.3d at 584 ("the meaning of the contract must be determined from the words or language used") (internal quotation marks and citations omitted). Where "a court can have reasonable confidence that it knows what the contract means," it can therefore decide the issue at hand on the basis of the contractual language alone. See Overhauser v. United States, 45 F.3d 1085, 1088 (7th Cir. 1995).

**C. Hearns' Breach of Paragraph 3 of the AGREEMENT Section of the Contract**

The court first notes that it is undisputed that Hearns, while serving as a Director of IB, was a primary organizer of a new competitor bank, LB. If acting as a Director of IB constituted Hearns' "employment" by IB, his activities as an organizer of the new competitor LB clearly constituted a breach of paragraph 3 of the AGREEMENT section of the Contract. This case therefore turns on the meaning of the Contractual term "employment," or "active employ."

The parties have agreed that Illinois law governs this dispute. Paragraph 14 of the AGREEMENT section of the Contract provides that "[t]his Agreement, and the rights of the parties hereunder, shall be governed by and construed in accordance with the laws of the State of Illinois." Illinois law on the interpretation of unambiguous contractual terms is straightforward.

"In Illinois, clear and unambiguous terms in a contract are given their 'ordinary and natural meaning.'" Interim Health Care of Northern Ill., Inc. v. Interim Health Care, Inc., 225 F.3d 876, 879 (7th Cir. 2000) (quoting Emergency Medical Care, Inc. v. Marion Memorial Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996)). Ambiguity is present only where the contractual language is "'reasonably or fairly susceptible to more than one construction.'" Omnitrus Merging Corp. v. Illinois Tool Works, 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993) (quoting Tishman Midwest Management Corp. v. Wayne Jarvis, Ltd., 500 N.E.2d 431, 434 (Ill. App. Ct. 1986)); see also A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp., 477 N.E.2d 30, 33 (Ill. App. Ct. 1985).

In this case, the court determines that the Contract, when read as a whole, unambiguously provides that Hearns was employed by IB. Hearns points to various cases which, he asserts, indicate that he was not an employee under the common law definition of that term. The court, however, finds it clear from the Contractual language that the parties contemplated that Hearns' activities as Director of IB would constitute his employment by IB. The Contract refers to Hearns as the "Employee" throughout the document. In fact, the Opening Paragraph of the Contract expressly indicates that Hearns is to be "hereinafter referred to as the Employee." Hearns' activities as Director are referred to as "employment" in numerous places in the Contract. For example, paragraphs 1-2 of the Contract's RECITALS provide, "The Employee is a director of the Corporation; and The Corporation recognizes the value of the services performed by the Employee and wishes to encourage said Employee's *continued employment . . .*" (Emphasis added.) Paragraph 1a of the AGREEMENT section of the Contract provides, "In consideration of the Employee's *continuing employment* until retirement at age sixty-five (65) . . ." (Emphasis added.) This Contractual language is not "reasonably or fairly susceptible of more

7

than one construction." See A.A. Conte, Inc., 477 N.E.2d at 33. Regardless of what the common law definition of the term "employee" may or may not be, it is abundantly clear that the parties have unambiguously provided, throughout the entirety of the Contract, that Hearns was an employee of IB. See Interim Health Care, 225 F.3d at 879 ("Illinois courts endeavor to construe contracts as a whole, giving meaning to each provision." ); see also Emergency Medical Care, 94 F.3d at 1061 ("If the [contractual] language unambiguously answers the question at issue, the inquiry is over.").

Since Hearns participated in the formation of a competing bank while employed by IB, there can be no genuine issue of material fact as to whether Hearns violated paragraph 3 of the AGREEMENT section of the Contract. He clearly did. This violation constitutes a material breach of the Contract. See Wolfram P'Ship v. LaSalle Nat'l Bank, 765 N.E.2d 1012, 1025 (Ill. App. Ct. 2001) ("A breach is material where the covenant breached is one of such importance that the contract would not have been entered into without it."). Hearns' material breach of the Contract justifies IB's refusal to perform its Contractual duties. See Oakleaf of Ill. v. Oakleaf & Associates, 527 N.E.2d 926, 933 (Ill. App. Ct. 1988). There can therefore be no genuine issue of material fact as to whether IB breached the Contract. It clearly did not.[2]

---

[2] Because the court has dispositively determined that there is no genuine issue of material fact as to whether Hearns breached paragraph 3 of the AGREEMENT section of the Contract, the court does not reach the issue of whether Hearns breached paragraph 8a. However, the court's preliminary research into the distances between LB and the various offices of IB indicates that Hearns has not breached paragraph 8a.

## III. CONCLUSION

Hearns' activities as Director of IB were defined as "employment" by unambiguous Contractual language. Paragraph 3 of the AGREEMENT section of the Contract provides that while employed by IB, Hearns was not to engage in competition with IB.

> AGREEMENT, ¶ 3, Agreements of Employee: In consideration of the foregoing agreements of the Corporation and of the payments to be made by the Corporation, the Employee agrees that while in the active employ of the Corporation, the Employee will devote such time, skill, diligence and attention to the business of the Corporation as required in order to carry out the duties and obligations of the employee to the Corporation and will not actively engage, either directly or indirectly, in any business or other activity which is or may be deemed to be in any way competitive with or adverse to the best interest of the Corporation.

While acting as Director of IB, Hearns organized the formation of the competing bank LB. IB's motion for summary judgment is therefore granted, and Hearns' motion for summary judgment is therefore denied.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R. Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: March 31, 2006